Good morning, Your Honors. May it please the Court, David L. Ross on behalf of the petitioner. This case is a classic example of how the issue of credibility is being used really to justify the judge's feeling, the I.J.'s feeling, that the country conditions really didn't warrant a grant of asylum. The credibility determinations are so minor and so inconsequential to the issues at hand. The two issues that the I.J. raised, one, that when he saw his mother, in his application he stated she looked like she had passed out after having been beaten and tortured and subjected to some sort of physical persecution, whereas when he testified in the court he said she looked very bad, looked like she had been beaten, but he didn't mention that she may have passed out. Counsel, let's assume that we agree with you on the lack of sufficient specific cogent reasons for an adverse credibility determination. Don't you run into some difficulties with the issue of future persecution? I mean, as I recall this, there were no adverse incidents after 1995 and not much in the way of support for an objectively reasonable fear of future persecution. In other words, how does it help you? Where do you get after the credibility finding? Well, with all due respect, Your Honor, I beg to differ with your conclusion. He, the petitioner in this case, was very specific as to what had happened. We have a government that practiced beating, practiced all kinds of torture. His father was forced to, instead of being a lawyer, was forced to become a masonry worker. I mean, that's pretty serious. Well, he talks about all those things, but then he does, but he also, your client also talks about, he himself acknowledged that the political climate in Armenia had changed and that his father was no longer being harassed by government security officials. So, the question is, you know, that, you know, how do you get past that? I mean, it's true he hasn't gone back to practice law as far as we know, but I don't, you know, I'm not sure that would be necessary in terms of to find that in order to make a determination here. Let's take this in the context of the case. You have a kid who's 17 or 18 years old and he leaves Armenia in 1995. What does he know about a political situation? He's not an expert on Armenia. Well, he may not be, but it's his burden to demonstrate not only something that happened in the past, but an objectively reasonable fear of future persecution. His youth and lack of sophistication may affect the subjective prong, but it doesn't really do anything to help him on the objective prong, which is, I guess, the focus of my concern with your case. Well, the objective prong is based on what experts say, what the State Department says, and what the judge knows to be true from factors that can be considered lawfully in an immigration proceeding. But to ask somebody who was in 1995 a teenager and come to the United States and five years later he's in an immigration asylum hearing and he's being asked a question, well, what about the political situation in Armenia? That's hardly a reason for an immigration judge to say, oh, well, that is a wonderful basis for not finding future persecution. I mean, that seems to be such an arbitrary subjective standard to apply. What the immigration judge should have said is, look, I'm going to look at the State Department reports in detail. I'm going to try to figure this thing out. I'm not going to make a conclusion that the situation has changed in Armenia to such an extent based on his testimony that I will not find future persecution. The fact of the matter is that you have to deal with, because we have to find that it would compel another result, that you've got, I think, Mr. Cherusutsian, he ten years have gone by. It appears to me that it's undisputed that the Dacheng are no longer banned and have been participating openly in political process since 1998, that Mr. Cherusutsian's father is no longer being bothered by security officials. And so, and we've got the ten years gone on and the changed conditions. How do you get past all of that? I mean, well, if you look at it in the context of Armenian politics, a year and a half ago the president of Armenia was assassinated. Just because the Dacheng is a political party that participates to a certain degree in opposition politics doesn't mean that there's freedom or that there's freedom of persecution in that particular country. In fact, over the years this court has specifically recognized that Armenia is a country that generates an objective fear of persecution because of the system, not necessarily. Well, not to everyone. I mean, it still has to be individualized. The fact that some Armenians have succeeded in their asylum claims does not translate to saying that every Armenian who brings an asylum claim necessarily has an objectively reasonable fear. It depends on everything in the record. We can go only by the record in each individual case and what the reasons for the past incidents were and all the other details of it. So what is Well, I mean, just look at what happened. His father was a prominent lawyer who represented political dissidents, and now he works in a construction site doing masonry work. He hasn't been Which means perhaps that he's not going to be the subject of much interest anymore because masons just aren't that exciting. Well, it also means that when a person like that goes from one level to another, it's because there's a fear factor. The individual knows he touched something that he shouldn't be touching anymore, otherwise his life is going to be in danger. Sure, nothing has happened to him because what he did is he said, from now on, I'm going to look the other way and I'm not going to do anything. Isn't it even less likely that his son, once removed, who's been gone and hasn't been part of any of the political things, that, objectively speaking, it was reasonable to conclude that he would not suffer future persecution? I don't think so, because when you look at past persecution, I don't think there's any dispute if you believe the petitioner that there was past persecution. When you have past persecution, there's a presumption that you will have future persecution. It's something the IJ actually erred in. What the IJ did is he said, I don't see any future persecution, but in reality, the burden was not on the petitioner. The burden is on the government to show why that presumption has been rebutted. It wasn't rebutted. There was speculation. Well, we should speculate. Maybe this happened. Maybe that happened. Maybe this would happen. But the fact of the matter is, if you believe the petitioner, past persecution creates a future persecution, and that's what happened in this case. And the credibility determination, with all due respect, seemed to be pretty bogus. It seemed to be a justification for nothing more than dissuading and deciding that asylum should not be granted. The judge should have simply said, I don't want to grant asylum, but not use the credibility for it. I don't know if I have any more time, but whatever time I do have, I'd like to reserve it. You have almost two minutes, and you're going to save that for rebuttal time. Thank you very much. We'll hear next from the government. Good morning. May it please the Court. Dan Goldman on behalf of the Attorney General. This Court should uphold the agency decision and deny the petition for review. The petitioner has a high burden in this Court. He hasn't met it. Counsel, let me just send you to the part of the case that, for my decision-making, is important. And speaking only for myself, it appears to me that the adverse credibility finding is not supported by the appropriate kinds of reasons. And if that were the case, if I continue to feel that way, and if someone else agrees with that, where does that take us in the case? Are there sufficient alternative holdings here that we would go on to the other issues, or would we have to remand it? What happens at the next layer? I think, obviously, first of all, Your Honor, the government would disagree with you. I understand you don't concede that. To answer your question, though, if the Court were to find that the record evidence compels reversal on the credibility finding, there's still an alternative finding by the immigration judge that this Court could rely on that the record evidence does not compel reversal of. And in that case, remand would not be necessary. The case here, it comes down to a young man saying, apparently, he fears persecution, but there's no next part of the sentence. It's his obligation to come into the court and say, to the immigration court, and say, I fear persecution, and here's why, here's how it's going to happen. He doesn't do that. What do we make of the reversal of presumptions that would happen? If there's no past, well, if there's past persecution, he gets a presumption that it would happen in the future. Is the finding of, the alternative finding of the agency sufficient for us to, in your view, deny the petition or affirm that holding, even if he were to have the benefit of that presumption? The short answer is yes, Your Honor. In this case, even if the Court were to reverse on the credibility finding, what does the evidence show? The evidence shows that if the petitioner were to be believed that his father was taken down, detained, held for some time, then the petitioner would have been held and detained, but why? The only evidence in this record is that the Armenian government wanted to know where these tapes or papers were that belonged to the father. They never, never said to the petitioner, we think you are a rebel. We think you are one of these subversives. We think you are one of the Dachshunds. Never said that, and that's key because he has to show an imputed political opinion in order to gain relief here. He hasn't done that, and there are certainly cases that come in front of this Court and certainly the Liberation Court where those kinds of allegations are made. The fact that it wasn't made here is, I think, a glaring hole in the story. What petitioner said was they wanted to know where these papers were. Apparently these papers were of some import, although we don't know what they were, and again, I think that goes to some of the details that were missing in this case. It would be, it could have been extremely helpful to know what were these papers, who were these clients, what was this so very, very important case that it caused the government to go after a lawyer, to force a lawyer to now work as a mason. If this case was so important to the Armenian government to do that, and therefore so important that it would lead to a grant of relief for Mr. Ratsouyan here, where are the details? They're not there, and that's why, to go back first to the credibility determination, the record evidence here does support the adverse credibility determination. There were some minor inconsistencies. And that's all that the I.J. relied on. He relied on a few things, Your Honor. He relied on a high school graduation date where it could easily have been a typographical error, and even the I.J. seemed to think so, and he relied on this issue of how, you know, the exact description of the mother. What else did he rely on? I think there were a couple of other things, Your Honor. First, certainly the government would concede that the date of a high school graduation from, I think it was 1993 to 1995, that's not the basis for an adverse, or should not be the basis for an adverse credibility finding. But the immigration judge says that. He says, in and of itself, that's not the inconsistency. And the judge says, in and of itself, that's not the basis. But put those in the context of other implausibilities, other inconsistencies, I would respectfully dispute some of the characterization that was made earlier. The testimony, or rather the asylum application wasn't that maybe the mom passed out or got weak when she saw me. It says she passed out and then get into court, and that's not testified to. That's a major omission because it goes to the heart of the claim. If his claim was that things were so serious for him that he got hauled down to the NSC headquarters along with his mother, if the mom was so badly hurt or so badly shocked that she passed out, that's a major omission to leave that out of your testimony. The other, I think the other implausibility, and perhaps the most important one is, what's the claim on behalf of the petitioner? Certainly the father, if the petitioner were to be believed, was forced to go from representing political dissidents to working as a mason, that's a significant claim. But there's no claim whatsoever that any political opinion was imputed from the father to the son. Well, that's not an issue of credibility. That's an issue of nexus. That's a different question. It is, Your Honor, but it also goes to the implausibility of the claim as to, which the immigration judge did cite, as to why the immigration judge didn't believe this claim. Why didn't he believe that the petitioner met his burden to bring a reliable, credible claim for relief? The petitioner is essentially saying, my father went through some bad things, I got pulled down to the NSC headquarters, but then there's no next step. And the next step has to be, and he claims that a political opinion was imputed to him. The problem with that claim is that there's no evidence to support that. Well, yeah, I don't, I guess I'm just having difficulty putting it into the pigeonhole where you put it. A person can sincerely believe that and have no evidence to support it, in which case you win. But it doesn't seem to me that the absence of evidence to substantiate a sincere belief means that it's not a sincere belief. Do you understand what I'm, my concern with your logic? I think, if I understand your question, Your Honor, it's that you're talking about more of the subjective problem. He certainly may fear problems back in Armenia. But when we get to an objective view, if the objective evidence doesn't support that, you could fear a lot of things. But objectively, there has to be some objective, reasonable basis for the fear. And in this case, it's not there, given a lot of the facts that have already been discussed today. Even if all these other things were true, that the father went from could have blown the government apart, I think, I'm paraphrasing, but I think that's what was the assertion. The father went from doing that to working as a mason. That's one, that's one potential fact. But then how does that affect the son? The son wasn't persecuted because of that. The son was never said, it was never said to the son, look, we think you're going to follow in your father's footsteps. We think you're one of those rebels, a dashnak, a subversive. None of that. And that's the type of evidence that would show an imputed political opinion. In the absence of that evidence, the petitioner hasn't met his burden. Mr. Taratsion didn't come into court and say, here's all the things that they said to me that show they imputed a political opinion onto me. Absent all of those things, he hasn't met his burden before the immigration court. And he certainly hasn't met his burden in this court to show that the evidence compels reversal. And specifically, I think that goes to the, I think it goes to both the credibility claim, credibility finding, but also the alternative finding. The alternative finding was even if this person was credible, there's no imputed political opinion and the country conditions have changed. And the petitioner acknowledges that. He's asked, what do you think is going to happen if you go back? And he says, I don't know. He didn't say I'm going to be persecuted, I'm going to be locked up. None of those accusations or claims, those are the kinds of things that would support his claim. He doesn't even make those assertions. For all those reasons, Your Honor, the government would urge this court to uphold the agency decision and deny the petition for review. Thank you, counsel. Mr. Ross, you have some rebuttal time remaining. Thank you, Your Honor. I just want to address two issues very quickly. Number one, there was no change in the country conditions. In fact, that was absent. And so the burden of rebutting the presumption wasn't met. And I'd also like to remind the court that this court in Bartsoumian-Gasparian v. INS, and it would be a Ninth Circuit 2003 case, 70-Fed-407. It specifically says, even though there was no systematic campaign, episodic political intimidation against the Dachnack party continues. And the court found that in 2003. It's on our brief on page 17. This court recognizes that there still is objective persecution. There is persecution and there is an objective fear. Nothing was presented by the government. With regard to the actual credibility, I'll just briefly touch upon it. What counsel was talking about was when both he and his mother had been beaten and held in jail, when he came out of the jail cell and he saw his mother, first he said in his application, she looked like she had passed out and had been beaten. When he testified a year later at the hearing, he said, she looked terrible and she looked like she had been beaten. If that is a discrepancy to the point where somebody should be denied asylum, that would be a far cry from what Congress intended in granting refugee status asylum to an applicant or, in this case, the petitioner. That was a totally inconsistent, totally irrelevant inconsistency, if it was even an inconsistency, considering the context of what happened. What happened here is the judge just didn't want to grant asylum and he came up with reasons that he thought would justify it. And, in fact, there was no justification for failing to grant asylum. And if this Court finds that the credibility determination is wrong by the AIJ, it is our position that asylum should be granted as a matter of law, not just because of the factual issues, but as a matter of law because of what transpired. Thank you. Thank you, counsel. The case just argued is submitted. And we'll take about an eight-minute break between this case and the next on the calendar.
judges: Leavy, Graber, Callahan